# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| ANTHONY TOMMY WILSON, #350120, | ) ) ) | |
| Petitioner, | ) ) | CIVIL ACTION NO. 9:15-02130-MBS-BM |
| v. | ) ) | **REPORT AND RECOMMENDATION** |
| ROBERT M STEVENSON, III, WARDEN, | ) ) ) | |
| Respondent. | ) ) | |

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The original petition was filed pro se on May 19, 2015.[1]

The Respondent filed a return and motion for summary judgment on September 23, 2015. As the Petitioner is proceeding pro se, a Roseboro order was filed on September 24, 2015, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. After receiving an extension of time to file a response, Petitioner filed a response in opposition on December 16, 2015.

---

[1] Delivery date pursuant to Houston v. Lack, 487 U.S. 266, 270-276 (1988).



This matter is now before the Court for disposition.[2]

### Procedural History

Petitioner was indicted in Florence County in June 2009 for murder, burglary first degree, armed robbery, possession of a weapon during the commission of a violent crime, and conspiracy [Indictment No. 2009-21-882]. (R.pp. 91-93). Petitioner was represented by E. Guy Ballenger, Esquire. On March 12, 2012, as a result of negotiations with the State, Petitioner pled guilty to murder under Alford v. North Carolina[3] and burglary first degree. (R.pp. 3-25). Petitioner was then sentenced to thirty (30) years on each charge, concurrent, with the remaining charges being *nolle prossed* by the State. (R.pp. 4, 24-25).

Petitioner did not appeal his plea or sentence. However, on August 9, 2012, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court; Wilson v. State of South Carolina, No. 2012-CP-21-2048; raising the following issue:

> **Ground One**: On March 12th 2012 I took a guilty plea on a violation of section 16-03-0010; 16-03-0020 and 16-11-0311 which is not the correct violation.
>
> **Supporting Facts:** Section 16-03-0010; 16-03-0020 is incorrect due to the fact that the crime was committed unwilfully and without intent.

(R.p. 29)[Errors in original].

Petitioner was represented in his APCR by Joshua A. Bailey, who amended Petitioner's application on September 5, 2013 (dated September 4, 2013), to raise the following issue:

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]400 U.S. 25, 31 (1970).

2



> Applicant was denied the effective assistance of counsel guaranteed by South Carolina law and the Sixth and Fourteenth Amendments to the United States Constitution in that plea counsel failed to adequately investigate and move to suppress [Petitioner's] confession.

(R.p. 40).

An evidentiary hearing was held on Petitioner's application on October 9, 2013; (R.pp. 43-69); and in an order filed December 10, 2013 (dated November 27, 2013), the PCR judge denied relief on the APCR in its entirety. (R.pp. 82-90).

Petitioner then filed a timely appeal of the PCR court's order. Petitioner was represented on appeal by Carmen V. Ganjehsani, Appellate Defender of the South Carolina Commission on Indigent Defense, who raised the following issue:

> Whether plea counsel's failure to adequately advise Petitioner regarding his ability to challenge the admissibility of his confession and file a motion to suppress Petitioner's confession made to police when he was only fourteen years old and where Petitioner told the police investigator that he only understood his <u>Miranda</u> rights "a little bit" violated Petitioner's right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution?

<u>See</u> Petition, p. 2 (Court Docket No. 20-2, p. 3).

On January 15, 2015, the South Carolina Supreme Court denied Petitioner's writ of certiorari. <u>See</u> Court Docket No. 20-4. The Remittitur was sent down on February 2, 2015. <u>See</u> Court Docket No. 20-5.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

> **Ground One:** Petitioner was denied the effective assistance of counsel guaranteed by S.C. law and the Sixth and 14th amendment to the U.S. Constitution.

> **Supporting Facts:** The state court's decision is contrary to and involves an unreasonable application of clearly established federal law, as determined by the Supreme Court. The state courts decision was based on an unreasonable of set of



facts. The Petitioner can provide before this court tangible evidence that proves that the Petitioner's so-called confession hold to be involuntary, thus newly discovered evidence provides actual compelled coercion thus to obtain statements from the Petitioner whom at the time was a Juvenile.

**Ground Two:** Petitioner was denied the effective assistance of counsel guaranteed by 14th amendment and the 6 amendment U.S.C.A.

**Supporting Facts:** The lower state court decision involved an unreasonable application of clearly established federal law. However upon recognizing the impact of newly discovered evidence, that which "the state," as well as the "Petitioner's trial counsel," had withheld from the Petitioner, raises serious question which therefore challenge the authority of the trial court to accept the Petitioner's plea and such evidence also provides with respect to the 5th and 6 and 14th amendments as a matter of law. That the trial court lack jurisdiction to accept a Plea negotiation trial counsel ineffective upon not providing a plea to the courts Jurisdiction.

See Petition, pp. 6, 8 (errors in original).

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### I.

In Ground One of his Petition, Petitioner argues that his trial counsel was ineffective



for failing to move to suppress his confession.[4]  This claim was addressed in Petitioner's PCR proceedings, where he had the burden of proving the allegations in his petition; Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986); as well as on appeal to the State Supreme Court.  See Court Docket No. 20-2; see also (R.pp. 84-90).  The PCR court rejected this claim, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. SeeWilson  v. State of South Carolina, No. 2012-CP-21-2048.

Specifically, the PCR judge found that: 1) Petitioner testified that he was taken to the police station on August 27, 2008, to be interviewed about his involvement in a murder in Florence County; 2) Petitioner was fourteen years old at the time; 3) Petitioner testified that the only people present in the interview room were himself and Sergeant Godwin of the Florence Police Department; 4) Petitioner testified Godwin did not read him his Miranda rights at first, but did read them to him right before beginning to record Petitioner's statement and again during the recorded statement; 5) Petitioner testified he responded that he understood the rights read to him by Godwin "a little bit"; 6) he further testified he did not understand his right to have counsel present; 7) Petitioner testified he was at the police complex about five hours when the statement was given and the officers offered him no food or drink during that time; 8) he was fourteen when questioned and had completed seventh grade; 9) Petitioner also had a prior record involving a shoplifting charge in 2005 when he was twelve; 10) on cross-examination, Petitioner admitted his mother was with him at the police complex just prior to giving his statement; 11) Petitioner testified he met with plea counsel twelve or thirteen times before the plea; 12) Petitioner testified they reviewed discovery and discussed the

---

[4]Petitioner also references "newly discovered evidence" in this Ground, which is discussed in Section II, infra.

5



possible defenses to the charges; 13) Petitioner and plea counsel discussed the State's plea offer of thirty years and it was Petitioner's decision to accept the offer; 14) Petitioner also testified he told plea counsel he wanted to file a motion to suppress;

15) plea counsel testified he was appointed to Petitioner's case in August 2008; 16) counsel testified he filed for and received discovery from the State; 17) counsel testified the State's theory of the case was that Petitioner and some co-defendants entered the victim's house with a crowbar with the intent to burglarize the home; 18) while inside, a co-defendant pressured Petitioner to stab the victim; 19) plea counsel testified that Petitioner thought he was innocent because he stabbed the victim under duress; 20) however, plea counsel testified that he explained to Petitioner that the defense of duress was not available for a murder charge; 21) plea counsel reviewed the State's discovery with Petitioner prior to Petitioner's juvenile waiver hearing; 22) that evidence included Petitioner's statement, DNA evidence, witness statements, and the statements of Petitioner's co-defendants; 23) counsel also had Petitioner evaluated by the Department of Juvenile Justice; 24) plea counsel testified they reviewed discovery again after the State made further disclosures after the waiver hearing; 25) plea counsel testified he reviewed Petitioner's statement and agreed Petitioner saying he only understood his rights "a little bit" gave him an argument for the statement's suppression; 26) however, counsel did not believe it was sufficient to show the waiver of Petitioner's rights was not knowing and intelligent; 27) even so, plea counsel testified he attempted to have the statement suppressed at the juvenile waiver hearing; 28) counsel testified he questioned the investigators about the statement and argued that the conditions of the interview and Petitioner's age indicated the waiver of Petitioner's rights was not knowing and intelligent; 29) however, the family court judge found the statement admissible;



30) plea counsel testified that his notes indicate that he met with Petitioner to discuss the statement at least four times: May 2010, June 2010, April 2011, and October 2011; 31) counsel testified they also discussed filing a motion to suppress the statement if the case went to trial; 32) however, Petitioner never wanted a trial and ultimately chose to enter a plea of guilty; 33) plea counsel testified he would have filed a motion to suppress the statement if Petitioner had wanted a trial; 34) plea counsel testified that at the time Petitioner prepared the plea affidavit, he discussed with Petitioner the fact that Petitioner would be waiving a suppression hearing by pleading guilty; 35) on cross examination, plea counsel re-iterated that Petitioner never wanted a suppression hearing before pleading guilty; 36) rather, plea counsel testified he could not file a motion to suppress until the State indicated the case would be called for trial; 37) at that time, the offer for thirty years would likely have been withdrawn;

38) because Petitioner chose to plead guilty, plea counsel did not have the opportunity to file a motion; 39) plea counsel also advised Petitioner the plea was in his best interest because the other evidence, even if the statement was excluded, was enough for a conviction; 40) the PCR court had the opportunity to observe each witness who testified at the hearing, to closely pass upon their credibility, and to weigh the testimony; 41) Petitioner's allegation that plea counsel was ineffective for failing to suppress the statement was without merit; 42) regarding this allegation, the PCR Court found plea counsel's testimony to be very credible, and Petitioner's to be not credible; 43) plea counsel met with Petitioner and discussed the statement numerous times; 44) although Petitioner alleged he only pled because the statement was not suppressed, he never indicated to plea counsel that a motion to suppress had to be filed before he would enter a guilty plea; 45) furthermore, plea counsel had already unsuccessfully challenged the introduction of the statement at the waiver hearing; 46)

7



thus, Petitioner was aware of the unlikelihood of success of a motion to suppress in circuit court; 47) Petitioner was also aware of the possibility the negotiated offer of thirty years would likely be unavailable if a motion to suppress was filed;

48) because plea counsel was concerned the offer would be withdrawn, he articulated a valid reason for employing the strategy of not immediately filing a motion to suppress; 49) furthermore, Petitioner did not show prejudice because the motion to suppress would likely have been denied; 50) Petitioner had a prior juvenile record and experience with police investigations; 51) furthermore, he was 14 years old and advised of his right to remain silent twice; 52) Petitioner presented no evidence he was of limited intelligence and didn't understand he could refuse to talk to the police; 53) the length and condition of Petitioner's detention were not unusual or unreasonable; 54) likewise, the questioning in the transcript does not indicate any misrepresentations, threats of violence, or promises of leniency; 55) finally, Petitioner's mother was present with Petitioner up to the time he gave his statement, including during the first recitation of his rights; 56) therefore, based upon the totality of the circumstances, Petitioner's statement was freely and voluntarily made after a knowing and intelligent waiver of his constitutional rights;

57) plea counsel was not ineffective because he advised Petitioner that suppression of the statement did not guarantee a victory at trial; 58) the State possessed eye-witness statements from the co-defendants indicating Petitioner stabbed the victim; 59) plea counsel testified that an acquittal was unlikely because of the statements of the co-defendants and the forensic evidence; 60) furthermore, although Petitioner believed he was less culpable in the murder, plea counsel correctly advised Petitioner that the first degree burglary charge would likely result in a conviction and maximum exposure of life imprisonment; 61) Petitioner did not show any prejudice from plea



counsel's decision not to file a suppression motion; 62) as to any and all other allegations raised in the application or at the hearing in this matter and not specifically addressed in the PCR court's order, Petitioner failed to present sufficient evidence regarding such allegations; and 63) Petitioner abandoned any such allegations.  (R.pp. 84-90).  As noted, the South Carolina Supreme Court denied Petitioner's appeal of this decision.  See Court Docket No.  20-4.

Substantial deference is to be given to the state court's findings of fact.  Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)).  Nevertheless, with regard to the ineffective assistance of counsel claim that was adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted



by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  <u>See</u> <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see</u> <u>also</u>

<u>Evans</u>, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect

to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established

federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in

considering Petitioner's ineffective assistance of counsel claim.

   Where allegations of ineffective assistance of counsel are made, the question becomes

"whether counsel's conduct so undermined the proper functioning of the adversarial process that the

trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 694.  In <u>Strickland</u>,

the Supreme Court articulated a two prong test to use in determining whether counsel was

constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient.

This requires showing that counsel made errors so serious that counsel's performance was below the

objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner

must show that counsel's deficient performance prejudiced the defense such that the Petitioner was

deprived of a fair trial. Further, where a guilty plea is involved, in order to show prejudice a

Defendant must show that there is a reasonable probability that, but for counsel's errors, he would not

have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985).

   Here, after careful review of the record and the arguments presented, the undersigned

finds and concludes for the reasons set forth hereinbelow that Petitioner has failed to meet his burden

of showing that trial counsel was ineffective under the standard of <u>Strickland</u> and <u>Hill</u>, or that his



guilty plea was not voluntarily and knowingly entered. <u>Smith v. North Carolina</u>, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

A review of the record reveals that Petitioner confirmed to the plea judge that he was pleading under an <u>Alford</u> plea to the charge of murder, which carried a penalty of no less than thirty (30) years up to life in prison, and which is classified as a violent offense and a most serious offense. (R.pp. 7-8). The plea judge explained that significance to the Petitioner. (R.pp. 7-8). Petitioner also pled straight up to the burglary first degree charge. (R.p. 8). Petitioner's counsel affirmed in open court and in Petitioner's presence that he had reviewed each of Petitioner's charges with him, the way the charges were classified under South Carolina's Code of Laws, the significance of that, and Petitioner's constitutional rights to a jury trial. (R.p. 9). Petitioner's counsel then reiterated that he had gone over those matters with the Petitioner at length on several occasions, including an affidavit from Petitioner submitted to the plea court. (R.pp. 9; <u>see also</u> Petitioner's Affidavit, pp. 100-108). For his part, Petitioner attested that he understood all of the questions reviewed in the affidavit, that he had reviewed those with his counsel, and that the answers on the affidavit were his and that those answers were correct. (R.pp. 9-10). Petitioner then affirmed to the plea court that he understood his right to remain silent, his right to a jury trial, and that he was giving up both of those rights by entering an <u>Alford</u> plea (R.pp. 10-11). Further, as part of the jury trial right that Petitioner was giving up, he testified that he understood that he was waiving his presumption of innocence to the charges and the State's burden of proof at a trial, his right to confront any of the state's witnesses at trial, his right to call witnesses in his defense, his right to take the stand at his trial if he had chosen to do so, his right to remain silent, the state's burden of proof beyond a reasonable doubt and to a unanimous



decision, and his trial appellate rights. (R.pp. 11-13). The Court also explained to Petitioner his rights to appeal his plea. (R.p. 13).

Petitioner then affirmed to the plea court that he understood that if the plea court accepted the negotiated plea, he would receive a thirty (30) year sentence on each of the charges, to be served concurrent. (R.pp. 13-14). Petitioner testified that, other than the sentence negotiation, no one had promised him anything, held out any hope of reward, or threatened him in any way. (R.p. 14). Petitioner testified that he was satisfied with his plea counsel's representation and advice, and that he had no complaints against his counsel or any member of his office. (R.p. 14). Petitioner also testified that he had told his counsel everything he knew about the case so that he could look into these matters for him and explore any possible defenses. (R.p. 14). Petitioner testified that he was pleading guilty of his own free will; (R.pp. 14-15); and after the solicitor recited the facts of the case to the plea court, Petitioner affirmed that those facts were essentially correct. (R.pp. 17-19).

Notwithstanding his testimony from his plea hearing, however, Petitioner testified at his PCR hearing that he wanted to challenge his confession and have a trial on his charges. (R.p. 48). Petitioner testified that when he gave his confession that only Sergeant Godwin was present and that Godwin only read him his Miranda rights right before he gave his recorded statement. (R.pp. 48-49). Petitioner testified that he was only 14 at the time and had been at the police station for about five hours when he gave the statement, that although he had been given water he had not been given any food, and that he would not have talked to Sgt. Godwin that day if he had understood his right to remain silent. (R.pp. 50, 52). Petitioner also testified that he talked with his plea counsel about 12 to 13 times and that they discussed his confession, that he had asked that a motion to suppress be filed, and that if his statement had been suppressed he would have insisted on a jury trial. (R.pp. 53-



54).  On cross examination , however,  Petitioner acknowledged that he had reviewed the discovery

responses including DNA, witness statements, and co-defendant's statements; that he told his counsel

his version of what happened; discussed possible defenses; and the plea offer of thirty (30) years.

(R.p. 55).  Petitioner testified that he would have gone to trial if his statement had been suppressed,

and that he only pled guilty because he did not feel comfortable going to trial with that confession.

However, he also conceded that it was his decision for the most part to plead guilty, that he agreed

with the facts that the Solicitor presented at his plea, that he waived his constitutional rights by

pleading guilty, and that he told the plea judge that he was satisfied with his counsel's representation.

(R.pp. 56-57).  Petitioner added that he did not tell the plea judge about never receiving a suppression

hearing because he did not feel like it was important, plus he was confused.  (R.p. 57).  Petitioner did

also concede that his mother was there right before he gave his statement, that his mother had been

with him the first time that Sgt. Godwin went over his rights, and that after his mother left Godwin

went back over his rights again.  (R.p. 57).

          Petitioner's plea counsel testified at his PCR hearing that he made discovery motions,

received and reviewed discovery responses with the Petitioner, and that he discussed with Petitioner

the elements of the charges and what the State was going to use to prove the elements.  (R.p. 59).

Plea counsel testified that there were three co-defendants who would all testify that Petitioner went

into the house in the nighttime by opening a window with a crowbar, that the intent was to burglarize

the house not necessarily to harm anyone, and that Petitioner was in the room when the murder

occurred.  (R.p. 60).  Counsel testified that although Petitioner believed he was innocent of the

murder charge because he was under duress at the time that it occurred, that he had explained to

Petitioner that he was also guilty of burglary, which itself carried a life sentence. (R.p. 60).  Counsel



testified that he also explained to Petitioner that duress would not be a defense to murder and that in any event there was no issue of duress to the burglary. (R.pp. 60-61). Further, counsel testified that he had contested Petitioner's confession in family court, where he had questioned Godwin extensively on the issue and surrounding circumstances, but that the family court had found the statement to be admissible. (R.p. 61). Counsel also testified that his notes indicated that he and the Petitioner discussed suppressing Petitioner's statement at least four times, and that if Petitioner had gone to trial, he would definitely have filed a motion to suppress his statement. (R.pp. 62-63). However, after Johnson's (Petitioner's co-defendant's) trial, the State indicated that if Petitioner was inclined to plead guilty, he needed to go ahead if he wanted to receive the benefit of the thirty (30) year sentence, and that if he had filed the motion to suppress at that point, the State could have potentially said the deal was off. (R.pp. 63-64). Counsel testified that even crediting Petitioner's theory that he was not guilty of murder because of duress, since Petitioner was facing a life sentence on the burglary charge alone, he believed that was the basis for Petitioner's decision to take the thirty (30) year plea deal. (R.p. 64). Petitioner's counsel also read from Petitioner's plea affidavit, which was made part of his plea record, as follows:

> Question: You may have given an incriminating statement in the case. You understand that if you plead guilty, you waive or give up the right to contest or challenge whether such a statement was freely and voluntarily given in accordance with your constitutional rights.
>
> Answer: Yes.

(R.pp. 65, 103).

   Based on this record and the evidence in this case, Petitioner has failed to establish that his counsel was ineffective for failing to file a motion to suppress his confession. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas



corpus]. Counsel testified that he did not file the motion because Petitioner wanted to plead guilty, and that if he had filed the motion there was a good chance the negotiated plea offer would have been withdrawn. Conversely, other than Petitioner's own unsupported assertions, which are contradicted by the record, Petitioner has offered no evidence to show that he wanted to risk losing his negotiated plea by filing a motion to suppress his statement, or to show that his guilty plea was involuntary. Hill, 474 U.S. 52 [Petitioner must show that he would have insisted on going to trial if not for counsel's errors]; cf. Jeter v. State, 417 S.E.2d 594, 596 (S.C.1992)[Petitioner has burden of proof to show he was incompetent at time of plea].

The PCR court found Petitioner's counsel credible on this issue and that Petitioner was not credible, findings that are entitled to substantial deference on habeas corpus review. Marshall v. Lonberger, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court ..."]. While a district court may, in an appropriate case, reject the factual findings and credibility determinations of a state court; Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); the court may not substitute its own credibility determinations for those of the state court simply because it may disagree with the state court's findings (assuming that were to be the case). Further, given the deference due the state court's findings on this credibility issue, Petitioner has not shown that the state court's findings were unreasonable under § 2254(d), nor has Petitioner overcome the presumption accorded the PCR court's findings. See Pondexter v. Dretke, 346 F.3d 142, 147-149 (5th Cir.2003)[finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses."]; Evans, 220 F.3d at 312. See Seymour v. Walker, 224 F.3d 542, 553



(6th Cir.2000)["Given the credibility assessment required to make such a determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2)."].

Petitioner has also failed to show he suffered any prejudice due to counsel's failure to file a motion to suppress, both because the family court had already ruled it was admissible and Petitioner has not shown a likelihood that he would have succeeded in having it suppressed in circuit court, and because even if Petitioner's confession *had been* suppressed, there was substantial evidence of Petitioner's role and guilt in the case from Petitioner's co-defendants and their statements. Strickland, 466 U.S. at 694 [To show prejudice, Petitioner must show that he was deprived of a fair trial and would not have pled guilty if not for counsel's deficient performance].

Further, in addition to being advised by counsel, it is clear in the record that the plea court also went over the facts of the case, Petitioner's rights prior to the acceptance of the plea, and the potential sentences, following which Petitioner admitted he had committed the crime[5] and entered his plea of guilty. Cf. Pittman v. South Carolina, 524 S.E.2d 623, 625 (S.C. 1999) ["A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea 'may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both."] (citing State v. Ray, 427 S.E.2d 171, 174 (S.C. 1993)); see also State v. Lambert, 225 S.E.2d 340 (1976)); Roddy v. South Carolina, 528 S.E.2d 418, 421 (S.C. 2000). See Sargent v. Waters, 71 F.3d 158, 160 (1995)["The [United States] Supreme Court has . . . held that while 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution

---

[5]With regard to the murder, Petitioner admitted that he stabbed the victim, but indicated he did not know whether his stabbing or his co-defendant's stabbing resulted in her death.



is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the statute."](quoting <u>Marshall</u>, 459 U.S. at 431-432).  Criminal defendants often make the decision to plead guilty based on a likelihood of conviction at trial, and although Petitioner now claims that his plea was involuntary based on his counsel's failure to file a motion to suppress his statement, "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).  Further, statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. <u>Via v. Superintendent, Powhatan Correctional Center</u>, 643 F.2d 167, 171 (4th Cir. 1981).  Here, Petitioner readily admitted his guilt, he has failed to show his counsel was ineffective under the standards discussed hereinabove, and he has not provided the Court with any evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court.

There is nothing reversible in the state court's findings based on the record of this case.  <u>Evans</u>, 220 F.3d at 312.  Petitioner has therefore failed to meet his burden of proving trial counsel failed to render reasonably effective assistance; <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]; <u>see also</u> <u>Wade v. State</u>, 419 S.E.2d 781, 782 (S.C. 1992)["Court must uphold the findings of the PCR judge if such findings are supported by any evidence"]; <u>Hill</u>, 474 U.S. 52 [Where a guilty plea is involved, in order to show



17

prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he could not have pled guilty and would have insisted on going to trial]; and Ground One of the Petition should be dismissed.

## II.

Petitioner contends in Ground Two that he was denied ineffective assistance of counsel due to "newly discovered evidence", which he contends the State and his plea counsel withheld from him. Petitioner's newly discovered evidence consists of a report from Godwin which contains Petitioner's confession along with the statement that Petitioner initially said he did not know anything about the murder. See Court Docket No. 1-1, p. 6.

Petitioner failed to raise this issue in either a direct appeal or his APCR proceedings.[6] Therefore, this issue was not properly preserved at the state court level, and as a result it is procedurally barred from consideration by this Court on federal habeas review. State v. Powers, 501 S.E.2d 116, 118 (S.C. 1998); Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also White v. Burtt, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing Pruitt v. State, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); cf. Cudd v. Ozmint, No. 08-2421, 2009 WL 3157305 at * 3 (D.S.C. Sept. 25, 2009)[Finding that where Petitioner attempted to raise an issue in his PCR appeal, the issue was procedurally barred where the PCR court had not ruled on the issue and Petitioner's motion to alter or amend did not include any request for a ruling in regard to the issue]; State v. Dunbar, 587 S.E.2d

_____

[6]Although Petitioner argues that this claim is based on "newly discovered" evidence, he in effect concedes that this evidence was available to him at least by the time of his PCR proceeding, as he contends that his PCR counsel was ineffective for failing to file a Rule 59 motion to reconsider the PCR Court's decision on this basis. See Court Docket No. 34, p. 3 ["Petitioner requested PCR to submit a Rule 59(e) motion to provide the Court with this vital piece [sic] of evidence."].



at 693-694 ["In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge.  Issues not raised and ruled upon in the trial court will not be considered on appeal."]; Miller v. Padula, No. 07-3149, 2008 WL 1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008); Sullivan v. Padula, No. 11-2045, 2013 WL 876689 at * 6 (D.S.C. Mar. 8, 2013)[Argument not raised in PCR appeal is procedurally barred]; see also Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n.3 (1971)[Discussing lower court's finding that failure to appeal denial of his state post-conviction petition constituted non-exhaustion of remedies]; Wicker v. State, 425 S.E.2d 25, 26 (S.C. 1992).

Because Petitioner did not properly raise and preserve this issue in either his APCR proceedings or by way of a direct appeal, it is barred from further state collateral review; Whiteley, 401 U.S. at 562 n. 3; Wicker v. State, supra; Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue this issue, it is fully exhausted.  Coleman v. Thompson, 501 U.S. at 735; Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the  petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural



rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

Because this issue was not properly pursued and exhausted by the Petitioner in the state court, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence. Martinez,132 S.Ct. 1309, 1316; Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

In his response brief, Petitioner asserts as "cause" for failing to raise this claim, that his PCR counsel was ineffective for failing to file a Rule 59 motion to have it considered. This argument is without merit.

The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)["[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"]; Smith v. Dixon, 14 F.3d 956, 973 (4th Cir. 1994)(en banc). However, while ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause"

20



if it amounts to an independent violation; Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996); and ineffective assistance of *PCR counsel* (as opposed to trial or direct appeal counsel) does not amount to an independent constitutional violation, and ordinarily would not therefore constitute "cause" for a procedural default. Murray v. Giarratano, 492 U.S. 1-7, 13 (1989) [O'Connor, J., concurring] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; Mackall v. Angelone, 131 F.3d 442, 447-449 (4th Cir. 1997); Ortiz, 149 F.3d at 932; Pollard v. Delo, 28 F.3d 887, 888 (8th Cir. 1994); Lamp v. State of Iowa, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); Parkhurst v. Shillinger, 128 F.3d 1366, 1371 (10th Cir. 1997); Williams v. Chrans, 945 F.2d 926, 932 (7th Cir. 1992); Gilliam v. Simms, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).

　　　　　　Even so, in Martinez the Supreme Court did carve out a "narrow exception" that modified

> "the unqualified statement in Coleman that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." Martinez, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons. First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system . . . . Indeed, the right to counsel is the foundation for our adversary system." Id. at ___, 132 S.Ct. at 1317.

> Second, ineffective assistance of counsel on *direct appellate review* could amount to "cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim. Id. at ___, 132 S.Ct. at 1316, 1317. But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review. Id. at ___, 132

21



S.Ct. at 1317-1318. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim." Id. at ___, 132 S.Ct. at 1318.

Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were Coleman read broadly) deprive a defendant of any review of that claim at all. Martinez, supr a at ___, 132 S.Ct. at 1316.

We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." Martinez, supra at ___, 132 S.Ct. at 1318-1319, 1320-1321.

Trevino v. Thaler, 133 S.Ct. 1911, 1917-1918 (2013); see also Gray v. Pearson, 526 Fed. Appx. 331, 333 (4th Cir. June 7, 2013)["The Supreme Court had previously held in Coleman that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel cannot establish 'cause' to excuse a procedural default. Coleman, 501 U.S. at 757. The Court established an exception to that rule in Martinez."] Therefore, because, under South Carolina law, a claim of ineffective assistance of trial or appellate counsel is raised in an APCR; cf. State v. Felder, 351 S.E.2d 852 (S.C. 1986); Bryant v. Reynolds, No. 12-1731, 2013 WL 4511242, at * 19 (D.S.C. Aug. 23, 2013); Gray, 526 Fed.Appx. at 334, fn *; a petitioner's claim of ineffective assistance of PCR counsel as "cause" for his default may be considered under the revised standard of Martinez and Trevino.

Under the first requirement of the Martinez exception, Petitioner must "demonstrate

22



that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." Gray, 526 Fed.Appx. at 333. Therefore, Petitioner must show that there is a reasonable probability that he would have received relief on his claim of ineffective assistance of trial counsel if it had been raised by PCR counsel in his APCR. Secondly, Petitioner must then show that his PCR counsel's representation was objectively unreasonable during his post-conviction proceeding for not raising this claim. Ford v. McCall, No. 12-2266, 2013 WL 4434389 at *11 (D.S.C. Aug. 14, 2013)(citing Horonzy v. Smith, No. 11-234, 2013 WL 3776372 at * 6 (D.Idaho Sept. 12, 2012)["The application of the Strickland test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one."]. For the reasons set forth hereinbelow, Petitioner has failed to show entitlement to relief under this standard with respect to his PCR counsel.

As previously discussed, under the Strickland standard, Petitioner must show his trial counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment, and that his counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, where a guilty plea is involved, as in this case, in order to show prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, supra. However, with respect to whether Petitioner's assertion that his trial counsel was ineffective for failing to raise an issue about the report which reflected that he initially denied his involvement



23

before confessing to the crimes is a sufficiently "substantial" claim under <u>Martinez</u>, the record reflects that at the time of Petitioner's guilty plea on March 12, 2012, Petitioner had already testified at the trial of his co-defendant, David Johnson, on February 13, 2012, during which Petitioner testified that he broke into the victim's home, that he stabbed the victim in the neck, and that he helped dispose of her body.  <u>See</u> Court Docket No. 20-6, pp. 597-598, 612.  Further, during cross examination, Petitioner acknowledged that when he first met with the investigators he initially denied any knowledge of the incident, during which he was shown the report indicating as such but which Petitioner now asserts is "newly discovered" evidence.  <u>See</u> Court Docket No. 20-6, p. 613.  Accordingly, the existence of this document and the fact that Petitioner had initially denied his involvement to the officers was clearly known to him prior to his guilty plea.  The record also shows that Petitioner admitted his role in both his co-defendant's trial and at his own guilty plea.

There is no basis in this record to overturn the findings of the PCR court with regard to Petitioner's decision to enter his plea, or to find that Petitioner's claim that his trial counsel was ineffective for failing to show Petitioner a statement recording that he had initially denied involvement and then confessed[7] presents any "substantial" claim which would have provided Petitioner relief if it had been properly raised in his PCR proceedings.  <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].  Specifically, Petitioner has not provided the Court with any evidence that had his trial counsel shown him this statement, he would have decided not to enter his guilty plea and proceed to trial.  As a result of this finding, any claim of ineffectiveness of PCR counsel also fails because there was nothing

---

[7]This is assuming arguendo that Petitioner did not see this statement prior to the entry of his guilty plea.



"objectively unreasonable" about PCR counsel not having raised this issue. <u>Trevino</u>, 133 S.Ct. at

1917-1918.  Therefore, Petitioner has also failed to show any "cause" in order to overcome his

procedural bar.  <u>Gray</u>, 526 Fed.Appx. at 333; <u>Rodriguez v. Young</u>, 906 F.2d 1153, 1159 (7th Cir.

1990), <u>cert</u>. <u>denied</u>, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without

cause gets a defaulted claim into Federal Court."].

        Further, to the extent Petitioner is instead attempting to argue that he is actually

innocent, cognizable claims of "actual innocence" are extremely rare and must be based on "factual

innocence not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998); <u>see</u> <u>also</u>

<u>Doe v. Menefee</u>, 391 F.3d 147 (2d Cir. 2004).  Petitioner has failed to present any new, reliable

evidence of any type that was not presented in any of his prior court proceedings which supports his

innocence on the criminal charges to which he admitted his guilt in Court and entered a plea of guilty.

<u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a

petitioner must "support his allegations of constitutional error with new reliable evidence-whether

it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-

that was not presented at trial."]; <u>Doe</u>, 391 F.3d at 161 (quoting <u>Schlup</u> for the evidentiary standard

required for a court to consider an actual innocence claim).  Petitioner has also failed to make any

showing that a fundamental miscarriage of justice will occur if this claim is not considered.

<u>Wainwright v. Sykes</u>, <u>supra</u>; <u>Murray</u>, 477 U.S. at 478; <u>Rodriguez</u>, 906 F.2d at 1159 [a fundamental

miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has

probably resulted in the conviction of one who is actually innocent"](citing <u>Murray v. Carrier</u>, 477

U.S. at 496); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876,

881 (S.D.Fla. 1995).



Finally, to the extent Petitioner is trying to argue that this claim is not procedurally barred because he is challenging the plea court's very subject matter jurisdiction due to the existence of this document, the ability to challenge a state court's subject matter jurisdiction "at any time" should "actually be phrased 'at any time he is in state court'". Thompson v. Perry, No 06-3429, 2007 WL 2579570 at *4 (D.S.C. Sept. 4, 2007). It is not for this Court to determine such issues of state law. Thompson, 2007 WL 2579570, at *4 ["[I]t is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists."]; Dew v. Pancake, No. 07-37, 2007 WL 4302429 at *4 (W.D.Ky. Dec. 7, 2007)["This court does not review determinations of state law [regarding a subject matter jurisdiction challenge] made by South Carolina courts"]. Therefore, that argument does not make this a viable claim in his federal habeas action.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 24, 2016
Charleston, South Carolina

26



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



27